NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 12-1749
_____

UNITED STATES OF AMERICA

v.

DUANE GREEN,
                              *Appellant*

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-10-cr-00186-001)
District Judge:  Honorable Gustave Diamond

_____

Submitted Under Third Circuit LAR 34.1(a)

December 18, 2012

Before: MCKEE, Chief Judge, SLOVITER, and VANASKIE, Circuit Judges

(Filed: December 20, 2012)

_____

OPINION
_____

SLOVITER, Circuit Judge.

Duane R. Green ("Green") appeals his convictions and sentence for possession with intent to distribute, and distribution of, crack cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C). Green contends that the District Court erred in denying his Motion to Dismiss for Constitutionally Infirm Grand Jury Selection. We will affirm the convictions and judgment of sentence.[1]

I.

Green, who is African-American, was indicted by a grand jury in the Pittsburgh Division of the Western District of Pennsylvania in September of 2010. According to Green, the grand jury contained no African-Americans. In the subsequent criminal proceedings, Green filed a Motion to Dismiss for Constitutionally Infirm Grand Jury Selection. He argued that the system for empanelling grand juries in the Western District, which draws from registered voter lists, excluded potential African-American jurors in violation of equal protection and of his right to a grand jury drawn from a fair cross-section of the community.[2] In support, he submitted a report prepared by Project Vote documenting that African-Americans comprised nine percent of Pennsylvania's population but only seven percent of its registered voters between 2002 and 2006. He

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 (2006). We have jurisdiction pursuant to 28 U.S.C. § 1291 (2006).

[2] The Western District selects grand jurors pursuant to the "Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors," App. at 48, which was developed and approved as required by the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq.

also submitted census data showing that African-Americans comprised approximately seven percent of the population of the Pittsburgh Division between 2005 and 2009.

The District Court, in a careful opinion, concluded that Green did not establish either a prima facie equal protection claim or a prima facie violation of the fair-cross-section requirement. The District Court therefore denied the motion. Green ultimately pled guilty but reserved a limited right of appeal. He now challenges the District Court's denial of his Motion to Dismiss. "We review the District Court's findings of fact for clear error, and its legal conclusions *de novo*." *United States v. Weaver*, 267 F.3d 231, 235 (3d Cir. 2001).

## II.

On appeal, Green revives his equal protection claim. Racial discrimination in the selection of grand jurors "strikes at the fundamental values of our judicial system and our society as a whole," and violates the guarantee of equal protection. *Rose v. Mitchell*, 443 U.S. 545, 556 (1979).[3] To make a prima facie case, a defendant must either provide evidence of intentional discrimination or prove that (1) a constitutionally cognizable group (2) was substantially underrepresented among grand jurors "over a significant period of time" and (3) that the selection procedure was at least "susceptible of abuse" or "not racially neutral." *Castaneda v. Partida*, 430 U.S. 482, 494 (1977).

Green has provided no evidence of intentional discrimination. We agree with the District Court that he has also failed to establish "that African-Americans have been

---

[3] A violation of equal protection by the federal government offends the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954).

substantially underrepresented on grand juries in the Pittsburgh Division over a significant period of time." App. at 10. The absence of African-Americans on Green's own grand jury does not demonstrate either intentional discrimination or systematic underrepresentation, and so is immaterial; the Constitution affords no right to a particular jury composition. *See Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). Green's statistics show that African-Americans are underrepresented on statewide voter lists (by reference to the state's population), but they tell us nothing about the relative representation of African-Americans on the voter lists of the Pittsburgh Division.[4] As the District Court concluded, Green "has not come close to producing the type of statistical evidence" that might demonstrate substantial underrepresentation over a significant period of time. App. at 11. Nor has he shown that the jury selection procedure is susceptible of abuse or is not racially neutral. The District Court properly found that Green fell short of making a prima facie equal protection claim.

Green's appeal also alludes to his "right to have a grand jury drawn from a fair cross section of the community." Appellant's Br. at 12. "The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 130 S. Ct. 1382, 1387 (2010). We have applied the right to state grand juries as well. *See Ramseur v. Beyer*, 983 F.2d 1215, 1229-31 (3d Cir. 1992) (en banc). Whether it extends to federal

---

[4] *Cf. United States v. Weaver*, 267 F.3d 231, 237-38 (3d Cir. 2001) (defendant's demographics expert "compared the number of African-Americans and Hispanics in the adult population of . . . the Erie Division to the number of African-Americans and Hispanics represented in the master wheels used in the Erie Division since 1995").

4

grand juries is unclear.[5]  We need not resolve the issue, however, because for purposes of raising issues on appeal "a passing reference . . . will not suffice."  *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).  To the extent that Green intended to assert a violation of a Fifth or Sixth Amendment fair-cross-section right, we deem it waived.  Even if it were not, and assuming *arguendo* that the fair-cross-section right extends to federal grand juries, Green's evidence cannot clear the prima facie threshold of showing that African-Americans are "not fairly and reasonably represented in jury venires" in the Pittsburgh Division because of "'systematic exclusion'" in the selection process.  *Berghuis*, 130 S. Ct. at 1392 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).[6]  As the District Court held, Green "has produced no evidence showing that African-Americans are systematically excluded from serving on grand juries in the Pittsburgh Division, let alone on a recurring basis."  App. at 9.

   We agree with the analysis of the District Court, and will affirm.

---

[5] Green suggests, and the District Court asserted, that the Fifth Amendment right to indictment by grand jury includes the right to a grand jury drawn from a fair cross-section of the community.  Although Justice Powell once wrote in dissent that "[t]he right to a 'representative' grand jury is a federal right that derives . . . from the Fifth Amendment's explicit requirement of a grand jury," *Castaneda v. Partida*, 430 U.S. 482, 509-10 (1977) (Powell, J., dissenting), neither the Supreme Court nor any circuit court of appeals has since recognized this right.

[6] We note, furthermore, that we have previously upheld the Western District's jury selection plan against a Sixth Amendment challenge, *see Weaver*, 267 F.3d at 240-244, and have also upheld reliance on voter and motor vehicle records as juror source lists. *Ramseur*, 983 F.2d at 1234-35 (3d Cir. 1992) (en banc).  Green presents no grounds on which to distinguish his case.